HENRY A. ZAMPA AND CAROL J. ZAMPA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zampa v. Commissioner
Docket No. 1620-89.
United States Tax Court
T.C. Memo 1990-561; 1990 Tax Ct. Memo LEXIS 633; 60 T.C.M. (CCH) 1132; T.C.M. (RIA) 90561; October 29, 1990, Filed *633 Decision will be entered under Rule 155. Joseph Falcone, for the petitioners. Eric M. Nemeth, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION By statutory notice of deficiency, dated December 20, 1988, respondent determined the following deficiencies in, and additions to, petitioners' Federal income tax: Section
Section
Year
Deficiency
[1] 6653(a)(1) 6653(a)(2)
1984
$ 3,827
$ 191.35
50% of the interest
due on $ 3,827 1985
$ 3,561
$ 178.05
50% of the interest
due on $ 3,561  After concessions, the issues for decision are (1) whether petitioner Carol Zampa (hereinafter Mrs. Zampa) was a partner with her husband in a distributorship of Amway products in 1984 and 1985, and thus subject to self-employment tax on her share of the distributorship's income for the years in issue under sections 1401(a)and 1402; (2) whether petitioners are liable for additions to tax pursuant to section 6653(a)(1) and (2) for negligence and intentional disregard of the rules *634 and regulations with respect to their 1984 and 1985 Federal income tax returns. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Henry Zampa and Carol Zampa were residing in Grosse Ile, Michigan, when they filed the petition in this case. Petitioners timely filed joint Federal income tax returns for 1984 and 1985 with the Cincinnati Service Center. From 1951 to 1981, petitioner Mr. Zampa was employed full-time by the Ford Motor Company (hereinafter Ford). He met petitioner Mrs. Zampa, another Ford employee, at work, and they were married in 1963. Mrs. Zampa quit working at Ford in 1964 when the first of their three sons was born. Petitioners' two younger sons were born in 1967 and 1969. In 1970, Mrs. Zampa started a small sewing business which she conducted out of the home on a part-time basis for several years. Petitioners first learned of the Amway Corporation (hereinafter Amway or Amway Corporation) and its distribution system from one of Mr. Zampa's coworkers at Ford, Clifford Crompton, who was working part-time as an Amway distributor. In *635 1972, under the sponsorship of Mr. Crompton, petitioners jointly signed an Amway application to become distributors of Amway products. They have operated the Amway distributorship from 1972 to the present. Petitioners never signed a formal partnership agreement other than the original application which still governs each petitioner's relationship with the Amway Corporation. Amway manufactures approximately 5,000 different cleaning, cosmetic, and vitamin products, and has an unusual distribution system in that Amway does not sell its products in retail stores or door-to-door. Instead, Amway relies on numerous distributors, often husband and wife teams, who sell Amway products directly to customers out of their homes, and who recruit other distributors who, in turn, sell Amway products that they order from the so-called "up-line" distributors who recruited them. Amway compensates its distributors with sales commissions and various bonuses that are awarded to distributors based on their direct sales performance and their success in recruiting productive, new, "down-line" distributors. Thus, the amount of commissions and bonuses received by an Amway distributor in a year is dependent *636 upon the number, size, and sales productivity of the generations of distributors he or she has successfully recruited. Once an Amway distributor begins to consistently sell a designated volume of products each month, he or she becomes a direct distributor and receives a larger percentage of the sales profits since the intermediary up-line distributor's commissions are eliminated. From 1972 to 1981, Mr. Zampa spent many weekday evenings, Saturdays, and lunch hours at Ford recruiting and training new Amway distributors. In 1981, he resigned from Ford and focused his efforts on developing petitioners' Amway distributorship. Although Mrs. Zampa had jointly signed the Amway application, Mr. Zampa was the only one to sign up new distributors through the application process. By 1984, petitioners had become direct distributors and had approximately 500 "down-line" distributors in their network. As the distributorship grew, Mrs. Zampa became progressively more involved with the business. In 1984 and 1985 Mrs. Zampa gave Mr. Zampa names of prospective distributors to contact, did most of the daily bookkeeping, kept track of the products ordered by their distributors which were delivered directly *637 to petitioners' home, answered and returned phone calls, packaged products for individual distributors, and supervised on Tuesday evenings between 2:00 p.m. and 7:00 p.m. when petitioners' network of down-line distributors came to their home to pick up and pay for the products they had ordered from the Zampas. In addition, petitioner Mrs. Zampa demonstrated Amway cleaning, make-up, and vitamin products for customers and other distributors, encouraged and helped train new distributors, and occasionally gave lectures on sales and motivation techniques at Amway seminars. In August 1984, both petitioners were pictured on the front page of a flyer that was distributed regionally to new and prospective Amway distributors to advertise a two-day Amway seminar being held at the Sheraton Inn in Lansing, Michigan. According to the flyer, both petitioners were scheduled to speak on the topic entitled "Amway -- The Joy of the Struggle." Petitioners were assigned the same Amway distributor number, 8395. All of the documents and invoices that Amway sent petitioners regarding their monthly and yearly sales totals, bonuses, and account adjustments, prominently displayed their distributor number *638 and their names, "Zampa, Henry & Carol." In 1985, petitioners sent their distributors IRS 1099 Forms on which the distributors were to claim their income from the Amway bonuses they had received. Each 1099 Form petitioners sent listed "Carol & Hank Zampa" as the payors. Amway sent petitioners financial statements showing that the distributorship received a total of $ 95,860.29 in gross bonuses in 1984, and a total of $ 97,663.48 in gross bonuses in 1985. Petitioners used most of the bonuses to pay for the cost of the Amway products they sold each year, and to cover all of the bonuses they were required to pay to their down-line distributors. Since 1981, petitioners have claimed that the distributorship was Mr. Zampa's sole proprietorship and have reported its financial operations on Schedule C of their tax returns. Petitioners' 1984 return reflects that the distributorship had $ 110,139 in gross income and net profits of $ 102, and paid numerous expenses including $ 20,000 in wages to Mrs. Zampa. Petitioners' 1985 tax return reflects that the distributorship had $ 99,846 in gross income and net profits of $ 14,703.62, and paid no wages to Mrs. Zampa. Petitioners did not submit *639 any of Mrs. Zampa's paychecks or other evidence showing that there was an employment agreement between her and the distributorship. By statutory notice of deficiency, dated December 20, 1988, respondent determined deficiencies in petitioners' 1984 and 1985 Federal income tax of $ 3,827 and $ 3,561, respectively, and additions to tax for both years under section 6653(a)(1) and (2). In the deficiency notice, respondent determined that the $ 20,000 petitioners claim was paid to Mrs. Zampa as employee wages in 1984 was in reality self-employment income subject to the self-employment tax imposed by section 1401(a). In addition, respondent disallowed many of the deductions that petitioners claimed on their 1984 and 1985 tax returns relating to the Amway distributorship. Petitioners have since conceded that respondent's determinations are correct, with the exception of Mrs. Zampa's liability for self-employment income, and the additions to tax for negligence. The disallowed deductions to which petitioners have conceded include the following: Deduction Claimed/
Amount Petitioners
Year
Income Understated
Concede was Improper
1984
Depreciation of
$ 3,825 swimming pool & patio
1984
Understated personal use
83
of automobiles (income)
1985
Depreciation of leased
14,053
cars, swimming pool, &
patio furniture
1985
Cost of goods sold
1,305
1985
Business meetings &
222
seminar expenses
1985
Miscellaneous expenses
1,456
1985
Car and truck expenses
1,689
1985
Residential energy
108
credit
1985
Understated personal
645
use of automobiles (income)
1985
Omitted state tax refund
1,200
1985
Omitted realized gain on
1,633
computer sale
1985
Unrecaptured investment
415
tax credit
Mr. *640 Henry Salla, a certified public accountant, prepared petitioners' tax returns for the years 1981 through 1984. By the end of 1983, Mr. Zampa was dissatisfied with Mr. Salla's work because for each of the years Mr. Salla had prepared petitioners' returns, respondent had audited them and determined there were tax deficiencies. [2] Despite his misgivings, Mr. Zampa again hired Mr. Salla to prepare petitioners' 1984 tax return. Petitioners hired a different certified public accounting firm, P.F.S., to prepare their 1985 income tax return. Petitioners' 1985 return, however, reflects many of the same tax deductions that had been disallowed by respondent in the four preceding years. OPINION Respondent argues that petitioners conducted the Amway distributorship as *641 a partnership in 1984 and 1985, and therefore, petitioner Mrs. Zampa is subject to self-employment tax on her share of the distributorship's profits. Respondent further argues that petitioners are liable for additions to tax, pursuant to section 6653(a)(1) and (2), because they negligently overstated and claimed improper deductions, omitted taxable income, and failed to pay the proper amount of self-employment tax. Petitioners contend that no self-employment income is attributable to Mrs. Zampa since she was merely an occasional employee of the distributorship which was held as Mr. Zampa's sole proprietorship. Petitioners further argue that even if the Amway distributorship was a partnership in 1984 and 1985, Mrs. Zampa had only a one-percent interest in it, compared to Mr. Zampa's 99-percent interest, and accordingly, they are only liable for a one-percent proportional increase in self-employment tax for each of those years. Petitioners also contend they are not liable for any additions to tax due to negligence since they relied on their certified public accountants to determine the income, deductions, and credits petitioners were entitled to claim on their income tax returns. The *642 first issue to be decided is whether petitioner Mrs. Zampa was her husband's partner in the Amway distributorship, rather than his employee, and thus subject to self-employment tax on her share of the distributorship's profits as determined by respondent. With respect to this issue, the notice of deficiency is presumed to be correct, and petitioners bear the burden of proving that they do not owe additional self-employment tax on Mrs. Zampa's interest in the distributorship. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Section 1401(a) imposes a tax on an individual's "self-employment income" which is generally defined as "net earnings from self-employment." [3]Sec. 1402(b); sec. 1.1402(a)-1(c), Income Tax Regs. The term "net earnings from self-employment" means gross income derived by an individual from any trade or business, including his distributive share of income from a partnership of which the taxpayer is a member, less certain deductions. [4]Sec. 1402(a); sec. 1.1402(a)-1, Income Tax Regs.Section 1402(c)(2) provides that the term "trade or business," when used with reference to self-employment income or net earnings from self-employment, shall not include the performance *643 or service by an individual as an employee. Petitioners argue that Mrs. Zampa is exempted from paying self-employment tax since pursuant to section 1402(c)(2) her services were rendered to the distributorship as an employee. Respondent asserts that Mrs. Zampa was a partner in the Amway distributorship in 1984 and 1985, and that sections 1401 and 1402 require her to pay self-employment tax on her share of the distributorship's earnings. In general, the term "partnership" is broadly defined for tax purposes. Section 761(a) provides that a "partnership" includes a "syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a corporation or a trust or estate." In the seminal case, Commissioner v. Culbertson, 337 U.S. 733, 742 (1949), the United States Supreme Court enunciated more specific *644 criteria to determine whether family members were, in fact, partners in a family enterprise. The question is * * * whether, considering all the facts -- the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent -- the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. [Fn. ref. omitted.]
We find that petitioners Mr. and Mrs. Zampa were partners for self-employment tax purposes under sections 1401 and 1402. First, we place weight on the facts that, originally, petitioners Mr. and Mrs. Zampa jointly signed the Amway application to become distributors; that petitioners have always shared the same Amway distributor number; that all of the correspondence petitioners receive from the Amway Corporation regarding their sales performance, records, orders, invoices, awards, and bonuses is addressed to both petitioners as though they are perceived *645 by the corporation to function as a team; and that petitioners were unable to produce any documentary evidence that employee payroll checks were ever issued to petitioner Mrs. Zampa. Based on our holding in Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947), it is fair to assume that either no such employment documents exist, or if they do exist, such documents would not be favorable to petitioners' position. Further, the IRS Forms 1099 which petitioners, themselves, sent to their distributors bear the names of both "Carol & Hank Zampa" as the payors. There is no apparent reason why petitioners would consistently accept, sign, and label their business forms and correspondence in this manner if the distributorship was, in fact, Mr. Zampa's sole proprietorship and not petitioners' partnership. Second, petitioners' daily conduct demonstrates that the Amway distributorship was a joint undertaking in which both Mr. and Mrs. Zampa had distinct but equally important responsibilities. Although Mr. Zampa was responsible for signing up the newly recruited distributors, upon whose sales the petitioners relied for income, Mrs. Zampa controlled *646 the actual distribution of the Amway products and kept track of the distributorship's numerous accounts -- two crucial and time-consuming tasks that had to be performed regularly in order for the business to function. [5] Additionally, Mrs. Zampa helped recruit, train, and motivate new distributors through her demonstrations of new products and her speeches which she made at Amway seminars.
Third, we are unpersuaded by petitioners' alternative argument that Mrs. Zampa's contribution to the Amway partnership was substantially less than Mr. Zampa's, and that petitioners are, therefore, liable for only a small increase in their self-employment tax. To the contrary, we find that in 1984 and 1985, petitioners Mr. and Mrs. Zampa were equal partners who both contributed substantial amounts of their time, effort, and skill to their enterprise. Petitioners submitted no evidence to prove that the distributorship's *647 profits were unequally divided between them, or that their roles were anything other than equally important to the success of the distributorship's expansion and operation. Finally, we dismiss petitioners' argument that because respondent did not object to petitioners' characterization of the distributorship as Mr. Zampa's sole proprietorship on their 1981, 1982, and 1983 tax returns, the distributorship's earlier status should govern its tax status for 1984 and 1985. It is well established that each tax year gives rise to a different cause of action. Thompson v. Commissioner, 38 T.C. 153 (1962), affd. in part and revd. in part 322 F.2d 122 (5th Cir. 1963).Moreover, respondent and petitioners resolved the disputed issues for the taxable years 1981, 1982, and 1983, by way of settlement agreements. Agreements as to Mrs. Zampa's and the distributorship's status are not determinative of those issues for subsequent tax years. Commissioner v. Sunnen, 333 U.S. 591 (1948).Accordingly, we find that petitioners are liable for self-employment tax on Mrs. Zampa's share of the distributorship's profits for the years at issue as determined by respondent. However, we do not find that petitioners *648 were negligent in failing to pay the proper amount of self-employment tax for 1984 and 1985. In this regard we note that respondent acquiesced to their characterization of the distributorship as a sole proprietorship on their tax returns in the years immediately preceding the years in issue. The next issue to be decided is whether petitioners are liable for additions to tax for negligence and intentional disregard of the rules and regulations pursuant to section 6653(a)(1) and (2) with respect to errors petitioners have conceded were on their 1984 and 1985 tax returns. Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985).Petitioners have the burden of proof. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). At trial petitioner Mr. Zampa stated that he was unaware that improper business deductions were being claimed on their tax returns in 1984 and 1985 and that he relied on his certified public accountants to make all the decisions concerning the returns' preparation. We find Mr. Zampa's testimony incredible considering that *649 he and Mrs. Zampa have demonstrated their business acumen by operating an Amway distributorship for 12 years, and considering that Mr. Zampa was able to explain many of his Schedule C expenses line by line at trial. Petitioner Mr. Zampa testified that petitioners kept excellent records concerning their business expenditures and that they gave all of their paperwork concerning their taxes to their certified public accountants. Accordingly, we assume petitioners' accountants relied on the information and records supplied to them. Petitioners , however, failed to submit their paperwork at trial or to adequately explain why it was reasonable for them to claim the erroneous deductions for their pool, patio, cars, and truck. Nor did petitioners offer any evidence to explain why it was reasonable to omit certain items of income such as the $ 1,200 State tax refund or the $ 1,633 gain that they realized on the sale of their computer in 1985. Even if petitioners relied on their certified public accountants to prepare their 1984 and 1985 tax returns, they were clearly on notice that such reliance may have been unreasonable and negligent. Mr. Henry Salla is the certified public accountant *650 who prepared petitioners' tax returns for the years 1981 through 1984. Mr. Zampa testified that by the end of 1983 he had become "uncomfortable" with Mr. Salla's accounting work due to the improper deductions Mr. Salla had approved on petitioners' returns in previous years that resulted in IRS audits and respondent's determinations that the returns reflected tax deficiencies. Despite Mr. Zampa's admitted doubts about Mr. Salla's competency as a tax preparer, he hired him again to prepare petitioners' 1984 tax return. Although petitioners hired a new accounting firm to prepare their 1985 tax return, many similar deductions were claimed on it that had been questioned, and subsequently disallowed, by respondent on their returns from earlier years. We note that neither of the two certified public accountants who prepared petitioners' tax returns in 1984 and 1985, nor Mrs. Zampa, who did the daily book work for the distributorship, testified at trial. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. [Citations omitted.] *651 This is especially true where, as here, the party failing to produce the evidence has the burden of proof." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165.Therefore, it must be presumed that the testimony of the two certified public accountants and Mrs. Zampa would have been unfavorable to petitioners' position on the negligence issue. Accordingly, we find that petitioners are liable for the additions to tax for negligence and intentional disregard of the rules and regulations for the errors on their 1984 and 1985 tax returns. Sec. 6653(a)(1) and (2). As to section 6653(a)(2), and as previously noted, petitioners are not liable for additions to tax on the portion of the deficiencies attributable to the omitted self-employment income. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent subsequently issued a notice of deficiency to petitioners, dated June 10, 1987, in which he determined deficiencies in their income tax for the years 1981, 1982, and 1983. In that deficiency notice, respondent did not object to petitioners' characterization of the distributorship as a sole proprietorship. The parties resolved the tax issues for those years pursuant to a formal settlement agreement on June 23, 1988.↩
3. Section 1401(a)↩ provides that for taxable years 1984 and 1985, the self-employment tax equals 11.4 percent of self-employment income.
4. The exceptions applicable to the computation of net earnings from self-employment tax found in section 1402(a)↩ are not at issue in this case.
5. See Hefti v. Commissioner, T.C. Memo. 1988-22↩, in which we held that Mrs. Hefti, in addition to Mr. Hefti, was liable for self-employment tax since she was "responsible for the financial and recordkeeping aspects of the business" and was involved with some of its technical aspects.